```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA, et al.
ex rel. JOSEPH PIACENTILE and
KEVIN B. KILCOYNE,

                Plaintiffs,
                                                            04 CV 3983 (SJ) (RML)
        v.
                                                            MEMORANDUM
                                                            AND ORDER


AMGEN INC., U.S. ONCOLOGY, INC.,
et al.,

                Defendants.
----------------------------------------------------X
```

A P P E A R A N C E S
UNITED STATES ATTORNEY
Loretta E. Lynch
271 Cadman Plaza East
Brooklyn, NY 11201
By:     Marshall L. Miller
        Deborah B. Zwany
*Attorney for the Government*

BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
By:     Eric L. Cramer
        Matthew P. McCahill
*Attorneys for Relator Joseph Piacentile*

STONE & MAGNANINI LLP
150 John F. Kennedy Parkway
Fourth Floor
Short Hills, NJ 07078
By:     David S. Stone

1

P-049

Robert A. Magnanini
*Attorneys for Relator Kevin Kilcoyne*

JOHNSON, Senior District Judge:

BACKGROUND

Over the course of the last nine years, ten *qui tam*[1] complaints were filed in this district against the pharmaceutical company known as Amgen, Inc. ("Amgen" or "Defendant"). All ten actions allege claims under the False Claims Act, 31 U.S.C. §§ 3730(e)(4)(A), (b)(5) and (c)(2)(A) ("FCA"). Put very generally, it was alleged that Amgen engaged in fraudulent marketing practices, the promotion of off-label uses and the provision of kickbacks to physicians in the course of promoting one or more drugs. A series of whistleblowers filed complaints as relators, including the instant relators ("Relators"), Dr. Joseph Piacantile ("Piacantile") and Kevin Kilcoyne ("Kilcoyne").

Piacentile alone filed the initial complaint in this action. He is a physician previously convicted of one count of conspiracy to make false statements in claims against Medicare, in violation of 18 U.S.C. § 371, and one count of income tax

---

1 *Qui tam* is an abbreviation for "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*," or "who as well for the king as for himself sues in this matter." BLACK'S LAW DICTIONARY 1368 (9th ed. 2009). A *qui tam* action is one that "allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." Id. The act was passed during the American Civil War in an attempt to put an end to the sale of shoddy provisions (from misfiring weapons to poorly-stitched clothing to sick horses) to the Union army by unscrupulous vendors.

P-049

evasion, in violation of 26 U.S.C. § 7201. After his convictions, he gained notoriety as a repeat whistleblower. According to the government, Piacentile has filed at least 14 *qui tam* actions since 2004.

Piacantile is not and was not ever employed by Amgen. For the last seven years, Piacentile has operated a website, whistleblowersagainstsfraud.com, through which he allegedly "partners" with other relators.[2] Indeed, in the instant action Piacentile joined Kilcoyne, a former Amgen sales representative, as a relator in April of 2007, over two years after filing the complaint. This was also done after the government disclosed to Piacentile those other *qui tam* complaints it believed to contain claims overlapping with those brought by him and Kilcoyne.

In October 2011, Amgen, the government, and ten others arrived at a settlement in principal, totaling $780,000,000 in civil and criminal penalties. The government offered Relators approximately $1.8 million of this amount, which Relators rejected. (The settlement ultimately did not include that $1.8 million.)

---

[2] The whistleblowersagainstfraud.com website boasts $1,000,000,000 in government recovery from its work. See www.whistleblowersagainstfraud.com (last visited September 25, 2013). One website, mainjustice.com, claims that Piacentile has personally made $17,000,000 as essentially a free agent whistleblower. See Leah Nylen, Joseph Piacentile, Professional Qui Tam Whistelblower, May 26, 2010, www.mainjustice.com/2010/05/26 /joseph-piacentile-professional-qui-tam-whistleblower (last visited September 25, 2013); see also Ashby Jones, Does the False Claims Act Work a Little Too Well?, The Wall Street Journal, May 25, 2010, available at http://blogs.wsj.com/law/2010/05/25/does-the-false-claims-act-work-a-little-too-well/) (last visited September 25, 2013).

The government now moves to dismiss the Third Amended Complaint, presenting four arguments: (1) that Relators have failed to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b); (2) that Relators are barred by 31 U.S.C. §§ 3730(e)(4)(A)-(B) in that their suits are not in fact whistleblower suits because the actions are based on information equally available to those who are strangers to the fraud alleged; (3) that the claims were first filed by other relators in other *qui tam* actions and are thus barred pursuant to 31 U.S.C. §§ 3730(b)(5); and (4) that 31 U.S.C. § 3730(c)(2)(A) permits the government to dismiss a *qui tam* as a matter of prosecutorial discretion. In short, the government argues that the Third Amended Complaint failed to actually bring light to any FCA violations committed by Amgen that were recoverable under the law. According to the government, this is the reason Relators were offered a mere -- if it is fair to even use such an adjective -- $1.8 million share of the massive settlement. This *de minimus* amount was viewed by the government as adequate given what it determined were not viable claims, on account of someone else bringing them first and/or because the allegations failed to provide the government with a fruitful lead, the *sine qua non* of a *qui tam* investigation.

The parties vigorously dispute -- almost line for line -- the allegations made in the various complaints filed in this action from 2004 through 2010 (the initial complaint and three amendments thereto) in order to determine (1) when along that filing continuum did Piacentile and Kilcoyne's allegations appear in relation to the

4

P-049

other *qui tam* complainants and (2) whether they otherwise pass muster under the FCA. However, for the reasons stated below, the Court finds the first three of the government's arguments largely academic, because pursuant to Section 3730(c)(2)(A), the government is correct in asserting that, with few exceptions not present here, it has the right to put an end to litigation it deems expensive and needless or futile.

## DISCUSSION

Section 3730(c)(2)(A) is titled "Rights to the parties to qui tam actions." Under that section is subsection (2)(A), which provides as follows:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

31 U.S.C. 3730(c)(2)(A). Relators have been notified of the motion and have responded to the motion in writing and at the September 24, 2013 appearance before this Court. For Section 3730(c)(2)(A) purposes, they have been provided with an opportunity for a hearing.

The government has provided the Court with authority that, while nonbinding, fully persuades the Court that the inquiry ought to end here. Specifically, in <u>Swift v. United States</u>, 318 F.3d 250 (D.C. Cir. 2003), plaintiff brought a *qui tam* action against one current and two former employees at the

5

United States Department of Justice's Office of Legal Counsel. Id. at 250. She alleged that the employees submitted false claims to the government, in the form of time sheets and leave slips. The government's loss totaled $6,169.20. Id. Three months after the filing of the action, the government declined to intervene and instead moved to dismiss. Id. at 251. The Circuit affirmed the lower court's decision to apply Section 3730(c)(2)(A):

> [W]e cannot see how § 3730(c)(2)(A) gives the judiciary general oversight of the Executive's judgment in this regard. The section states that "The Government" – meaning the Executive Branch, not the Judicial – "may dismiss the action," which at least suggests the absence of judicial constraint. To this must be added that the presumption that decisions not to prosecute, which is what the government's judgment in this case amounts to, are unreviewable.
>
> [ . . . ]
>
> Reading § 3730(c)(2)(A) to give the government an unfettered right to dismiss an action is also consistent with the Federal Rules of Civil Procedure. Rule 41(a)(1)(i) permits a plaintiff to dismiss a civil action "without order of the court" if the adverse party has not yet filed an answer or a motion for summary judgment.

Swift, 318 F.3d at 252 (citations omitted and emphasis added). Relators have made no attempt to challenge this persuasive reasoning.

Under a subsequent and stricter test, the government would still be entitled to dismissal. In Ridenour v. Kaiser-Hill Co., 397 F.3d 925 (10th Cir. 2005), the complaint alleged that three contractors for the Department of Energy were being paid for security procedures that were not being followed. Three employees filed suit as relators under the FCA. Due to the nature of the work (the cleanup of a

6

P-049

former nuclear weapons manufacturing facility), the government determined that environmental and national security issues were paramount – in its view, continued litigation would delay cleanup and risk inadvertent disclosure of classified information. Id. at 929-930. After a two-year investigation and a concession that the allegations in the *qui tam* complaint had merit, the government moved to dismiss. Citing the government's "greater control" over *qui tam* actions brought about by the 1986 Amendments to the FCA, the court adopted the following approach: if (1) the government is able to identify a valid governmental purpose; and (2) a rational relationship exists between that purpose and the dismissal of the action, then the burden shifts to the relator to demonstrate that the government's position is "fraudulent, arbitrary and capricious or illegal." Id. at 936 (quoting United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998)); see also S.Rep. No. 99-345, at 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5292).

The Ridenour court found that the government met its burden, crediting the government's reasoning that continued litigation would risk the disclosure of classified information. Ridenour, 397 F.3d at 936-7. Also significant was the government's claim that pursuing the *qui tam* action would delay the environmental cleanup by requiring the reassignment of certain staff from the cleanup efforts to the review of classified documents for possible use and/or redaction, id. at 937, a process that is time consuming and expensive when performed with the level of

7

P-049

care required by law. Because the relators failed to rebut the government with anything other than speculation, the district court's dismissal was affirmed. Id. at 940. And the Second Circuit has cited the Redenour standard, albeit in dicta. See United States ex rel. Stevens v. State of Vt. Agency of Natural Res., 162 F.3d 195 (2d Cir. 1998) rev'd on other grounds, 529 U.S. 765 (2000) ("[I]n light of Separation of Powers concerns, district court need find only that the government's decision to dismiss a qui tam suit, even a meritorious one, is supported by a 'valid governmental purpose' that is not arbitrary or irrational and has some 'rational relation' to the dismissal.") (quoting Sequoia, 151 F.3d at 1145).

Here, the government has stated its preference to avoid expending further resources on this action. The first of these *qui tam* actions was filed in 2004, and an eight year investigation ensued. Various companies were subpoenaed, over 9,000,000 documents were reviewed, and over 250 witnesses were interviewed. The government determined that many claims were meritorious. The $780,000,000 settlement is a testament to that conclusion. However, in the course of that investigation, the government also determined that Relators' claims were unsupportable. Simply put, that is enough. Stephens, 162 F.3d at 201 ("The government is thus given ample authority, whether through settlement or dismissal, to bring the litigation to an early end, and although the *qui tam* plaintiff must be given a hearing, the court need not, in order to dismiss, determine that the government's decision is reasonable.") (citing Sequoia, 151 F.3d at 1145).

8

P-049

The vise of budget sequestration has had the federal government's agencies in its grip for the past six months, and it is tightening. People are being laid off, fewer people are being hired, mandatory furloughs have been imposed, and wages have been reduced. Yet the same amount of work waits to be done, if not more, as the past has shown there to be no ebb to the flow of litigation. Everything down to the use of copier paper has been examined for efficacy. In this age of austerity, the coffers from which the government drew in order to investigate Amgen for eight years are no more. Therefore, even if the government's right to dismiss ought to be conditioned on a demonstrable nexus to a valid government purpose, this Court finds that nexus to be present.

Relators made no mention of this two-pronged test. However, at oral argument, Relator Kilcoyne conclusorily argued that the government's actions have been "arbitrary and capricious." Kilcoyne did not see fit to support this argument with much by way of evidence or case law. So, too, the Court finds it warrants little attention.

Relators do, however, argue that the government cannot dismiss the action because the government cannot dismiss *qui tam* claims that they have settled. However, the government did not settle Relators' claims. Quite the contrary. The Settlement Agreement provides that certain conduct not be included in the conduct upon which the settlement is based (the "Covered Conduct"). Paragraph 8c in particular exempts

9

P-049

> Allegations pertaining to Amgen alleged in the Third Amended Complaint filed in <u>United States et al. ex rel Piacentile, et al. v. Amgen, Inc., et al.</u>, CV-04-3983 (E.D.N.Y.) (the "Action") to the extent the claims currently alleged in the Action (the "Allegations") are dismissed with prejudice as to Relators Piacentile and Kilcoyne exclusively pursuant to 31 U.S.C 3730(c)(2)(A). For avoidance of doubt, this paragraph . . . shall not apply as to any of the Covered Conduct that could be construed as having been alleged by Relators Piacentile and/or Kilcoyne but that is dismissed by a Court for any other reason, including pursuant to Rule 9(b) ... or 31 USC 3730(e)(4)(A) or (b)(5).

(Relator's Opp. at Appx C. p.6.) This passage makes clear that if prosecutorial discretion is the sole basis of dismissal in this action, which it is, then the conduct covered by the Third Amended Complaint remains untouched. And, as correctly pointed out by the government, a dismissal based on prosecutorial discretion leaves open the possibility that the government may in the future come by information that changes its view that the claims are not substantiated. At that point, the government could reinstate this action, and if the action can be reinstated, then it is not now settled. Therefore, this argument is without merit.

## CONCLUSION

Section 3730(c)(2)(A) permits the government to dismiss this action. This is true whether or not the Court must first ensure that a valid government purpose must be furthered by the decision to dismiss. An eight-year investigation of several claims brought by different relators culminated in a $780 million settlement, only

10

$1.8 million of which the government felt could justifiably be offered to Relators, in light of the weakness of their claims. When Relators rejected that sum, the government was within its right to determine that further litigation was unlikely to lead to fraud prevention or additional recovery. Therefore, the motion to dismiss is granted, and to the extend Relators wish to amend the Third Amended Complaint, that motion is denied as futile. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

Dated: September 30, 2013
      Brooklyn, New York

/s/
Sterling Johnson, Jr., U.S.D.J.